IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN A. HALEY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:04-CV-427-MEF |
| | ) | |
| JOHN E. POTTER, Postmaster General, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John A. Haley (hereinafter "Haley") brings suit against his employer, John

E. Potter, the Postmaster General for the United States Postal Service (hereinafter "USPS"),

for race discrimination and retaliation[1] he alleges he suffered when another employee was

laterally transferred into an Operation Support Specialist position in September of 2001.

---

[1]   Haley's Complaint set forth claims for race discrimination (Count I), sex discrimination (Count II), age discrimination (Count III) and retaliation (Count IV). Defendant moved for summary judgment on all claims, including a disparate impact claim which arguably could be said to have been pled. In responding to the motion for summary judgment, Haley explicitly abandoned his claims of sex discrimination and age discrimination. Haley also specifically stated that he is not pursuing a disparate impact claim, but rather seeks to recover only for disparate treatment. Finally, although the Complaint identified two employees that Haley claimed received preferential treatment, he has informed the Court that he intends to proceed only with his claims which use Kimberly Dowe as a comparator and that he wishes to abandon claims based on comparisons to Dean Dambach. Given these concessions, the Court finds that Defendant's Motion for Summary Judgment (Doc. # 10) is due to be GRANTED on the following claims: (a) Count II; (b) Count III; (c) any claims that Dean Dambach was treated better than Haley due to race discrimination or retaliation; and (d) any disparate impact claims. Thus, the only claims still pending before this Court are Haley's claims of race discrimination and retaliation based on alleged preferential treatment given to Kimberly Dowe.

This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. # 10). The Court finds that the motion is due to be GRANTED.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction and venue, and the Court finds adequate allegations in support of personal jurisdiction and venue.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

2

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the

light most favorable to the non-moving party, establish the following facts:

The USPS operates the Montgomery Processing and Distribution Center (hereinafter "PDC") where it employees approximately 500 people.  The PDC is a mail processing facility.  Within the PDC is a small operation which handles "In-Plant Support."  Haley denominates the "In-Plant Support" operation as a "segregated area" which he contends Joel Falkowski (hereinafter "Falkowski"), the Manager of In-Plant Support, intentionally created for Caucasian employees.  Compl. at ¶¶ 20-21.

The sole remaining claims in this action are predicated on Haley's contention that on account of his race and in retaliation for past protected conduct, he was denied an opportunity to obtain a position as an Operation Support Specialist position in the "In-Plant Support" operation in September of 2001.  Haley further contends that Falkowski, used a temporary assignment known as a "detail" to manipulate the selection process.  Specifically, Haley alleges that Kim Dowe (hereinafter "Dowe"), a Caucasian female, was "preselected and detailed into the Operation Support Specialist position in which position she was trained to perform the duties of that position; after her training, she was deemed to be qualified for that position and was placed into it without competitive posting."  Compl. at ¶ 16.

Haley is an African-American male who has been employed by the USPS for more than thirty years.  For more than twenty years, Haley has been in management positions for the USPS.  Since 1983, Haley primarily held the position of Supervision of Distribution Operations, in the Montgomery, Alabama mail processing plant. In 2001, Haley's grade was

EAS-16.  Since 1985, Haley has received nine "details" into other positions, including higher grade positions such as Labor Relations Specialist (grade 17) and Postmaster of Greensboro, Alabama (grade 18).  Haley is a disabled veteran of the United States armed forces, and he holds a master's degree in human resource management which he obtained in 1993.  He received a merit award for fiscal year 2001.  His base salary in December of 2001 was $55,435.

Dowe began her employment with the USPS in 1988.  Prior to working with the USPS she was employed for more than ten years in management for a regional grocery store chain. A little more than a year after starting her employment with the USPS, Dowe applied for and received a job in the Statistical Programs section of Finance as a Data Collection Technician. This job involved capturing data from mail pieces in the delivery stream and uploading the information to Headquarters.   During a 1992-1993 restructuring of the USPS, Dowe's position as a Data Collection Technician was eliminated.  As a result she worked briefly as a clerk in mail processing and was then placed in In-Plant Support as a Data Collection Technician working in Quality Improvement.  This position involved gathering productivity data from a wide variety of mail operations at the direction of the Manager of In-Plant Support.  In this position, Dowe was able to learn about other parts of the In-Plant Support operation, including aspects of a position known as Directory Analysis Specialist.

In 1997, Dowe was promoted to Directory Analysis Specialist as a grade EAS 16. The Directory Analysis Specialist position to which Dowe was promoted became available when

Michael Hough moved laterally into a newly-created OSS position. The Directory Analysis Specialist position had been posted and Dowe was one of three applicants who interviewed for the position. Dowe had not been detailed into the Directory Analysis Specialist position before she was awarded it through the competitive interview process. The Directory Analysis Specialist position is technical in nature and involves diagnosis of problems in directory databases, maintaining updates to address databases, correcting database errors, auditing data that comes in from the Remote Encoding Centers that support the Montgomery PDC, and running diagnostic tests on automated mail processing equipment.

In 2001, Michael Hough left his OSS position with the USPS to take a job with another government agency. Dowe requested a lateral reassignment into the OSS position. The OSS position at the Montgomery PDC primarily involves developing, maintaining, and updating ZIP code sort-plan software for automated mail processing equipment, as well as, acceptance testing for new software and new mail processing equipment. While she had been working as a Directory Analysis Specialist, Dowe had the opportunity to observe and interact with employees in the OSS position on a daily basis, and consequently, she was familiar with the OSS position. Dowe was briefly detailed into the OSS position after Hough left and before her request for lateral reassignment was granted. Her request for a lateral reassignment into the position was granted and effective in late September of 2001, Dowe was reassigned into the OSS position at grade 16. Her base salary in this position was $42,199, the same salary she was previously paid for her work as a Directory Analysis

6

Specialist.

Falkowski was the selecting official for the OSS position; the Plant Manager, Roderick Carleton (hereinafter "Carleton") was the concurring official. Falkowski chose to laterally reassign Dowe into the OSS position after she requested it. Falkowski granted the lateral reassignment request without first positing the OSS vacancy. Section 743 of the Postal Service Handbook EL-312 allows managers like Falkowski to fill vacancies by non-competitive lateral reassignment. Falkowski granted Dowe's request for lateral reassignment into the position because of her technical background and experience in In-Plant Support, including working closely with those employees working OSS positions while she was a Directory Analysis Specialist.

The USPS has promulgated policies against discrimination in personnel decisions on the basis of race, color, religion, sex, national origin, age or disability. Pursuant to the policies of the USPS position changes and advancement are to be based solely on merit, applicable experience, and knowledge, skills, and abilities. Procedures for assignment, reassignment[2] and promotion[3] to EAS positions with the USPS are addressed in the Postal Service Handbook EL-312 (hereinafter "the Handbook"). Section 717.1 of the Handbook

---

[2] USPS policy defines reassignment as the permanent assignment, with or without relocation, of an employee (a) to another position with the same grade or (b) to a position with an equivalent grade.

[3] USPS policy defines a promotion as the permanent assignment, with or without relocation, of an employee (a) to a position having a higher grade than the position to which the employee is currently assigned or (b) to a position with a higher equivalent grade.

provides that "[m]anagement may reassign nonbargaining employees noncompetitively. Section 743.11 provides that noncompetitive applications for voluntary lateral reassignment can be considered at any time they are received, before the competitive announcement process begins, during the process, or after the competitive applications have been addressed. Section 743.12 provides that if a position is not filled through noncompetitive procedures, then the position is filled competitively through a vacancy announcement and employee application process.

## DISCUSSION

### A. Disparate Treatment

Title VII requires that all personnel actions affecting employees or applicants for employment in the USPS "shall be made free from any discrimination based on race[.]" *See, e.g.,* 42 U.S.C. § 2000e-16. Haley contends that granting Dowe's request for a lateral reassignment to the OSS position constituted race discrimination. In support of this contention, Haley relies on circumstantial evidence, rather than direct evidence or a meaningful statistical evidence. Because Haley relies upon circumstantial evidence, rather than direct or statistical evidence, his discrimination claims are properly analyzed using the burden shifting paradigm developed in *McDonnell Douglas v. Green* and its progeny. *See, e.g., McDonnell Douglas v. Green,* 411 U.S. 792 (1973). Under this approach, the plaintiff has the burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Id.* at 802. This *prima facie* case requires "evidence

8

adequate to create an inference that an employment decision was based on a[n] illegal discriminatory criterion." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 (1977). The plaintiff's establishment of a *prima facie* case raises a presumption of illegal discrimination. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment action. *Holifield v. Reno,* 115 F.3d 1555, 1564-65 (11th Cir. 1997). "This intermediate burden is 'exceedingly light.'" *Id.* (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir. 1994). The defendant has only a burden of production, not a burden of persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas,* 411 U.S. at 802; *Burdine,* 450 U.S. 253-55.

Once the defendant satisfies this burden of production,

> the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

*Chapman,* 229 F.3d at 1024 (internal citations and quotations omitted). The establishment of the *prima facie* case does not, in itself, entitle the plaintiff to defeat a defendant's motion for summary judgment. After the defendant proffers a legitimate reason for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a

9

reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037.

The employment action challenged in this case is not a promotion. Because the grade of the OSS position was not a higher grade than the grade level of the positions held by Haley and Dowe prior to the challenged reassignment, the employment action is more aptly characterized as a decision to award Dowe a lateral reassignment. The Supreme Court and the Eleventh Circuit Court of Appeals have set forth a variety of versions of the *prima facie* case for various types of employment discrimination cases and furthermore, they have cautioned that the articulated versions of the *prima facie* case are not intended to be applied in a rigid, mechanistic, or ritualistic fashion. *See, e.g., United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *Jones v. Gerwens,* 874 F.2d 1534, 1539 (11th Cir. 1989)*.* Thus, while the articulations of the *prima facie* case on which the parties rely seem to arise from factual contexts entirely different than the one this case present, the Court is satisfied that Haley has arguably established a *prima facie* case of discrimination with respect to his non-selection for the OSS position.

The Court is also satisfied that the Defendant has offered legitimate, non-discriminatory reasons for the challenged decision. Consequently, the heart of the dispute in this motion is whether there is sufficient evidence of that the proffered reason is a pretext for discrimination to require determination of that issue by a jury. Haley may establish pretext by undermining the credibility of USPS's proffered explanations. *See Combs v.*

10

*Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998).  Instead of relying on conclusory allegations of discrimination, Haley must adduce evidence demonstrating "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence."  *Id.*

Haley contends that the legitimate non-discriminatory reasons for granting Dowe the lateral reassignment are a pretext for race discrimination.  In support of this contention, Haley argues that he had superior qualifications for the OSS position.  In particular Haley highlights his educational background and his decades of experience as a supervisor in mail processing[4].  Haley also relies on the fact that the selection of Dowe was based on subjective criteria and did not arise out of a competitive selection process in which the opening was posted.  According to Haley, Falkowski failed to follow USPS regulations in filling the position.

---

[4] It is obvious from Haley's testimony that he believes that the decision to laterally transfer Dowe instead of moving him into the OSS position was unfair in part because he had been working for the USPS longer than Dowe.  The "fairness" of such a decision is not before this Court.  The issue is whether the decision constituted illegal discrimination on the basis of Haley's race.  Indeed, federal courts "are not in the business of adjudging whether employment decisions are prudent or fair.  Instead [the] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision."  *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999), *cert. denied,* 529 U.S. 1109 (2000).  *Accord, Rojas v. Florida,* 285 F.3d 1339, 1342 (11th Cir. 2002)  (explaining that in analyzing discrimination claims, federal courts must be careful not to let plaintiffs "simply litigate whether they are, in fact, good employees" and must focus on whether the proffered reason for employment decision at issue was an honest one, rather than whether it was a correct one).

The Eleventh Circuit Court of Appeals has indicated that the issue in discrimination cases is not whether one employee is better qualified than another because federal courts do not sit in judgment of an employer's decision. *See Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *reh'g denied & reh'g en banc denied*, ___ F.3d ___ (Apr.2005). As a result, " a plaintiff cannot prove pretext by simply showing that he was better qualified than the individual who received the position that he wanted." *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir .2000), *cert. denied*, 532 U.S. 958 (2001). Pretext can be established through comparing qualifications only when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." *Cooper*, 390 F.3d at 732 (citation and internal quotation omitted). However, an employee's showing that the employer hired a less qualified candidate is probative of whether the employer's reason is pretextual, but not proof of pretext. *Lee*, 226 F.3d at 1253. The Court cannot find on the record before it that any disparity between the qualifications of Haley and Dowe for the OSS position is so apparent as to virtually jump off the page and slap you in the face. While it is true that Haley's qualifications and Dowe's qualifications are different, the Court cannot say that a reasonable factfinder could conclude that Haley's qualifications made him cognizably more qualified than Dowe for the OSS position. Indeed, given the technical nature of the position, Dowe's technical experience in the In-Plant Support section is far more relevant to the OSS position than any experience which Haley possessed.

With respect to Haley's other arguments regarding the process employed to grant

12

Dowe's request for a lateral transfer, the Court is not persuaded that the evidence on which Haley relies creates a triable issue as to whether the legitimate, non-discriminatory reasons proffered for granting the lateral transfer were a pretext for race discrimination.  Simply put, the Court cannot find any evidence that Falkowski's actions violated the USPS' policies regarding lateral reassignment.  Contrary to Haley's assertion, USPS policy provided that such action could be taken without posting the position or providing for a competitive process.

Taken as a whole and viewed in the light most favorable to Haley, the record before this Court in this case compels the conclusion that Haley has failed to create a genuine issue of material fact with respect to whether the legitimate, non-discriminatory reasons proffered for the decision to laterally transfer Dowe was a pretext for either race discrimination. Under the applicable legal standards, Defendant is entitled to judgment as a matter of law on Haley's claim that he was denied the OSS position on account of his race.  Consequently, Defendant's motion for summary judgment is due to be GRANTED as to that claim.

**B.  Retaliation**

In addition to his claim that he was denied the OSS position on account of his race, Haley also contends that Falkowski and Carleton granted Dowe's request to be laterally reassigned into the vacant OSS position rather than allowing Haley to apply for it in order to retaliate against Haley for past complaints he had made against Falkowski and the USPS.

13

The analysis of a claim of retaliation based on circumstantial evidence[5] is similar to the analysis of a discrimination claim based on circumstantial evidence.

> To establish a prima facie case of retaliation, [an employee] must show: (1) [he] engaged in protected activity; (2) [his] employer was aware of that activity; (3) [he] suffered adverse employment action; and (4) there was a causal link between [his] protected activity and the adverse employment action.

*Maniccia v. Brown,* 171 F.3d 1364, 1369 (11th Cir. 1999) (*citing Little v. United Tech.,* 103 F.3d 956, 959 (11th Cir. 1997)). "To establish that a plaintiff engaged in statutorily protected expression, ... a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311 (11th Cir. 2002). Protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure. *Berman v. Orkin Exterminating Co.,* 160 F.3d 697, 702 (11th Cir. 1998) (filing EEOC complaint is protected conduct); *Rollins v. Florida Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir. 1989) (internal complaints of discrimination are statutorily protected conduct).

It is undisputed that Haley repeated engaged in protected conduct.  Haley has participated in prior EEO activity by having filed at least twenty-one EEO complaints during the course of his employment with the USPS.  Moreover, this lawsuit is the third that he has filed in this Court against the USPS.  For purposes of the motion for summary judgment, the

---

[5] There is no direct evidence in this case that the decision to transfer Dowe rather than Haley was in retaliation for Haley's earlier complaints of discrimination.

14

USPS concedes that Haley suffered an adverse employment action. Despite these concessions, the USPS does not concede that Haley can establish a *prima facie* case of retaliation. To the contrary, the USPS argues that Haley cannot offer any evidence of a causal link between his protected activity and the adverse employment action. In order to satisfy the causal link element, a plaintiff must show that the adverse employment action and the protected activity are not completely unrelated. One common method of establishing the causal link element is close temporal proximity between the adverse employment action and the protected activity. Of course, this is not the sole means of establishing the causal link element; rather it is merely the most commonly used approach.

Haley argues that the fact that Falkowski and Carleton were aware of his protected conduct constitutes sufficient evidence of the causal link element of the *prima facie* case of retaliation. The Court does not agree. This approach conflates two of the elements of the *prima facie* case in such a way as to obliterate the requirement of showing evidence of a causal link. Haley has no evidence that shows that either Falkowski or Carleton harbored bias against him as a result of his protected activity.

Moreover, Haley's half-hearted attempt to rebut the fact that his protected conduct occurred long before the employment action he challenges as retaliatory is unpersuasive. Haley notes that one of his complaints of discrimination against the USPS was filed in September of 2000 and was still "ongoing" at the time that Dowe's request for lateral reassignment was approved. It is Haley's protected conduct which must be close in time to

15

the alleged adverse employment action, not the administrative processing which resulted from his protected conduct. The Court finds that Defendant is entitled to summary judgment on this claim because Haley has failed to proffer evidence on an essential element of this claim on which he bears the burden of proof.

Even assuming *arguendo* that Haley could be said to have made out a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate reason for the adverse action. *See, e.g., McDonnell Douglas Corp.*, 411 U.S. at 802; *Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1148 (M.D. Ala.), *aff'd* 88 Fed. Appx. 385 (11th Cir. 2003). If the Defendant does so, Haley must show the defendant's proffered reason for the adverse action is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804; *Gaddis,* 242 F. Supp. 2d at 1148. Put another way, it is Haley's burden to demonstrate that Defendant's proffered reason for the challenged adverse employment action was not the true reason for the decision. *See, e.g., Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997). To do this, Haley must produce evidence which creates a triable issue of fact as to the truthfulness of Defendant's rationale for the decision. *See, e.g., Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 507 n.6 (11th Cir. 2000); *Stewart v. Happy Herman's Chesire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir. 1997). The close temporal proximity between protected conduct and an adverse employment decision cannot alone create a genuine issue of material fact on the issue of whether the employer's proffered non-retaliatory reason was pretextual. *See, e.g., Wascura v. City of South Miami,* 257 F.3d 1238, 1245 (11th Cir. 2001);

16

*Stewart,* 117 F.3d at 1287-88; *Padron v. BellSouth Telecomm., Inc.,* 196 F. Supp. 2d 1250, 1256-60 (S.D. Fla. 2002), *aff'd without opinion,* 62 Fed. App. 317 (11th Cir. 2003). *Accord, Tran v. Trustees of State Colls. in Colo.,* 355 F.3d 1263, 1270 (10th Cir. 2004). Thus, Haley's contention that the temporal proximity between the processing of his previous EEO charge and the decision with respect to the lateral transfer to the OSS position alone creates a genuine issue of material fact as to whether the USPS took the challenged action to retaliate against Haley for complaining about discrimination, is unsupported in law. Indeed, none of Haley's evidence is sufficient to create a triable issue on whether the legitimate, non-retaliatory reasons for the employment action were pretextual. Accordingly, Defendant is entitled to summary judgment on this claim.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's claims. Accordingly, it is hereby ORDERED as follows:

(1) Defendant's Motion for Summary Judgment (Doc. # 10) is GRANTED.

(2) The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this the 6th day of June, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE